SO ORDERED.

SIGNED this 8 day of August, 2017.

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# FAYETTEVILLE DIVISION

IN RE:

KGC HOMEOWNERS, INC.,             Case No. 16-01062-5-JNC
                                        Chapter 11
     Debtor
_____

KGC HOMEOWNERS, INC.,
       Plaintiff,

v.                                                      Adv. Pro. No. 16-00139-5-JNC

WILLIAM DOUGLAS MANAGEMENT, INC.
       Defendant

## ORDER REGARDING MOTION TO DISMISS

The matter before the court is the Motion to Dismiss Amended Complaint (Dkt. 35, the "Motion to Dismiss") filed by defendant William Douglas Management, Inc. ("WDM" or "Defendant") on May 22, 2017, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. A hearing was held on June 27, 2017, in Greenville, North Carolina, following which

the court took the matter under advisement. After consideration of the case record and arguments made at hearing, this matter is ready for determination.

## BACKGROUND

Plaintiff KGC Homeowners, Inc. ("KGC" or "Plaintiff") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 1, 2016, and subsequently commenced this adversary proceeding against WDM on September 8, 2016. WDM filed a motion to dismiss the complaint on March 30, 2017 (Dkt. 24), after which KGC filed an amended complaint on May 10, 2017 (Dkt. 30, the "Complaint"). WDM filed the Motion to Dismiss now before the court on May 22, 2017.

The Complaint consists of allegations supporting three causes of action founded in: (1) breach of contract, (2) negligence, and (3) breach of fiduciary duty. The claims originate from an agreement dated July 16, 2012 entitled "Standard Management Agreement" (the "Agreement"), under which WDM ostensibly managed the homeowner association of a condominium complex owned by Plaintiff and its unit owners, and the alleged breach of that agreement or duties promulgated thereunder. However, WDM entered the Agreement with King's Grant Homeowners Association, Inc., which is a separate legal entity from KGC. Complaint at ¶ 9; Complaint Ex. A. At the hearing, WDM stipulated that a written contract existed between the parties for pleading purposes only,[1] and that the discrepancies with respect to the parties named in the contract were the result of a mutual drafting error. The Plaintiff alleges that an additional verbal contract existed between the parties, which was not reduced to writing "due to Defendant's carelessness."

---

[1] Importantly, WDM did not, at the hearing or in its amended answer, admit to a breach of contract, only that a breach of contract claim has been adequately pled for 12(b)(6) purposes. In addition, WDM disputes the existence of any verbal contract between the parties (or verbal amendment to the existing contract) and the factual allegations in the Complaint. At this early stage of the case, the court need not address the scope or validity of the contract.

Complaint at ¶ 11. The Agreement provided that WDM, as a professional property management company, would manage the Plaintiff's homeowner association and condominium buildings.

The Complaint further alleges that in January of 2014, three of the buildings in the condominium complex sustained significant damage as a result of fire sprinkler lines freezing and bursting. Complaint at ¶ 30. In accordance with the Agreement, WDM handled all aspects of the repair work and common insurance claims. WDM, as part of the repair work, employed a "fire watcher" at a cost of "at least $60,000." Complaint at ¶ 35. The insurance company subsequently denied reimbursement of expenses related to the "fire watcher." Complaint at ¶ 38. KGC also alleges that in addition to the "fire watcher," the Defendant inappropriately allocated significant insurance proceeds for purposes not beneficial to the Plaintiff. Complaint at ¶ 3. Finally, KGC contends that a contractor filed a lawsuit against KGC for unpaid repairs, served the summons and complaint upon WDM as KGC's agent, and that WDM did not timely notify KGC of the action. The failure to notify KGC of the action, it is alleged, resulted in a default judgment of more than $120,000.00 being entered against KGC. Complaint at ¶¶ 39-40. In November 2015, Defendant terminated the contract in writing. Complaint at ¶ 19. Plaintiff ultimately filed for chapter 11 bankruptcy protection on March 1, 2016.

## DISCUSSION

Because WDM conceded at the hearing that the Complaint adequately pleads a breach of contract and thereby effectively withdrew its motion to dismiss the first cause of action, the remaining issues before the court are whether Plaintiff has pled claims of negligence (the second count) and breach of fiduciary duty (the third count) sufficient to meet the federal pleading standards set forth in *Twombly* and *Iqbal*, and under North Carolina law since both claims are founded in state law.

**I.    LEGAL STANDARD FOR RULE 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours &Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. 662, 679, 129 S. Ct. 1937, 1949 (2009); *see also Adcock v. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal,* 556 U.S. at 681, 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads enough "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims

are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

In reviewing a motion to dismiss under Rule 12(b)(6), the court may review documents attached to the complaint and incorporated by reference, *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), and may properly take judicial notice of matters of public record without converting the motion to one for summary judgment. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

**II.    ANALYSIS**

As noted above, WDM conceded at the hearing that a contract exists between the parties and that the Complaint alleges facts sufficient to support a breach of contract claim "that is plausible on its face." Accordingly, the motion to dismiss the breach of contract claim for failure to state a claim upon which relief may be granted will be denied as to that first count. WDM did not, however, at the hearing concede that its actions as alleged in the Complaint were either within the scope of the contract or that the contract was verbally amended to include the actions taken by it with respect to the insurance proceeds and other events.  It therefore, and not surprisingly, denies that a breach of contract occurred.

Faced with a denial of contract scope and breach, KGC has pled claims founded in negligence and breach of fiduciary duty, which it conceded at the hearing were claims alternative to contract if the relevant alleged actions are deemed outside of the contract's scope. WDM meanwhile continued to seek dismissal of both the negligence and breach of fiduciary duty claims, primarily basing its argument on state law (instead of federal court pleading standards) as discussed below.

### A. Negligence

The elements of a negligence claim are: (1) defendant owed a duty to plaintiff, (2) defendant breached the duty by failing to conform to the required standard of conduct, (3) the breach of duty resulted in injury to the plaintiff, and (4) actual injury to the interests of the plaintiff occurred. *Hutchens v. Hankins*, 63 N.C. App. 1, 13, 303 S.E.2d 584, 592 (1983); *see also Pinnix v. Toomey*, 242 N.C. 358, 87 S.E.2d 893 (1955) (describing the elements of negligence under North Carolina law). Plaintiff asserts three main factual allegations in support of its negligence claim. First, Plaintiff alleges that the Defendant was negligent in its management of the repair process because it hired an unnecessary "fire watcher" at an alleged aggregate cost of $60,000. Second, KGC alleges that WDM acted negligently in the appropriation of funds received from the insurance company by using a large amount of earmarked funds to repair or replace uninsured personal property of individual condominium owners, rather than the insured common area property and assets of KGC. Finally, KGC alleges that the Defendant was served with a lawsuit against KGC as its service agent and that it subsequently failed to alert or inform KGC of the filed action, resulting in a default judgment against it "in excess of $120,000.00" and ultimately leading Plaintiff to file for bankruptcy protection.

Given the detail of the pleading and because Defendant stopped short of stipulating to the existence of a verbal contract between the parties or to any of the factual allegations included in the Complaint, which could lead to the possibility of no contract claim in the case, the court finds that the Complaint states sufficient facts to establish a plausible claim for negligence and facially satisfies the pleading requirements set forth in *Twombly* and *Iqbal* for the purposes of Rule 12(b)(6).

WDM contends that even if all of the allegations contained in the Complaint are taken as true (as they must be for purpose of Rule 12(b)(6)), KGC cannot prevail on its negligence and breach of fiduciary duty claims as a matter of law because of the economic loss doctrine. If the Plaintiff is able to establish at trial that a contract existed between these parties concerning the actions taken by WDM for KGC as set forth in the Complaint, then the claim of negligence could possibly be barred by the economic loss doctrine, which prohibits the recovery of damages in tort where a contract exists to allocate risk and assign damages. *See N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73 (1978). Similarly, the economic loss doctrine may bar recovery of damages on a claim of breach of fiduciary duty if the actions at issue pertain to scope of an existing contract and its breach. *See Ramsey v. Bimbo Foods Bakeries Dist., LLC*, No. 5:15-CV-6-BR, 2015 WL 1611339, *4 (E.D.N.C. 2015). However, because WDM only conceded that a claim of breach of contract had been sufficiently pled to defeat the 12(b)(6) standard and has not admitted that the actions complained of were within the scope of that contract or that a contract existed as to the alleged activities (whether written or verbal), the court need not reach that question today. KGC is entitled to plead causes of action in the alternative, with the recognition that it ultimately may not be able to recover under all three theories. Accordingly, at this stage of the case, the negligence and breach of fiduciary duty causes of action must be assessed for factual sufficiency and plausibility under federal procedural standards rather than the North Carolina substantive law regarding economic loss doctrine and fiduciary duty.

### B. Breach of Fiduciary Duty

In North Carolina, a claim for a breach of fiduciary duty has three elements: "(1) a showing of a fiduciary relationship, (2) thereby establishing a fiduciary duty, and (3) a breach

of that duty." *Dalton v. Camp*, 353 N.C. 647, 654, 548 S.E.2d 704, 709 (2001). The existence of a contract between parties creates a duty between the two parties as to the other contracting party; however, the "parties do not thereby become each others' [sic] fiduciaries, they generally owe no special duty to one another beyond the terms of the contract. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998). A contract between two parties alone does not give rise to a fiduciary relationship, and a fiduciary relationship must exist to create a fiduciary duty. *Id*.; *see also Dalton*, 353 N.C. at 651, 548 S.E.2d at 707. A fiduciary relationship has been defined in North Carolina "as one in which 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and due regard to the interests of the one reposing confidence.'" *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707. A fiduciary relationship may "exist in fact . . . [where] there is confidence reposed on one side, and *resulting domination an*

*d influence on the other*." *Id*. "Courts have found that the existence of superior knowledge, trust and inexperience are insufficient to establish a fiduciary relationship." *Parker v. McClain (In re Parker)*, Adv. Pro. No. 13-00055-8-SWH, 2017 WL 2210246, at *5 (Bankr. E.D.N.C. May 18, 2017) (citing *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 533 S.E.2d 827 (2000); *River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc.*, No. 1:10CV991, 2012 WL 1439133 (M.D.N.C. April 25, 2012)).

Here, KGC has failed to plead specific facts sufficient under *Iqbal* and *Twombly* to establish the existence of a fiduciary duty. The Complaint relies on the alleged existence of a contract (whether verbal or adopted) and mishandling of insurance claims and lawsuit service, all of which, if true, may constitute a breach of contract or perhaps negligence. The allegations for the breach of fiduciary duty claim do not present enough factual information

for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" as the result of a fiduciary relationship, or that there was some heightened duty owed by the Defendant to the Plaintiff in the first place. *See Clatterbuck*, 708 F.3d at 554. Rather, the Complaint contains conclusory statements aimed at establishing the existence of a fiduciary duty owed to Plaintiff by Defendant that fail to convince the court that there was domination and influence such as to create a fiduciary duty in fact or in law. Consequently, the court finds that the claim of breach of fiduciary duty fails to meet the standard required to defeat a 12(b)(6) motion.

## CONCLUSION

Based on the foregoing:

1. The Motion to Dismiss is DENIED as to the breach of contract cause of action;

2. The Motion to Dismiss is DENIED as to the negligence cause of action; and

3. The Motion to Dismiss is ALLOWED as to the breach of fiduciary duty cause of action.

**END OF DOCUMENT**